Our next case this morning is number 15, 2027, Icon Health and Fitness, Inc. versus Johnson Health Tech Company Limited. Mr. Freeman. Good morning, Your Honor. May it please the court. This case is fairly simple. The claim involves, the claim requires changing a number of exercise-related steps or sets. The reference, the dire reference discloses changing the number of repetitions. The board concluded that changing the number of repetitions is enough to disclose changing the number of sets. The problem with that is that there's no evidentiary support for that. And that's something that the simplicity of the technology now, from our position in 2016, that makes that pretty dangerous. Because the appeal of hindsight reasoning is something that can be great in a situation like this. So we have to be rigorous in our examination of the record and find that evidence that supports the connection between the disclosure of changing a number of repetitions and the disclosure of changing a number of sets. And its final written decision. Can you tell me what you mean by set? Sure, a set is defined in the dire reference. And that same term is not used in the 1, 2, 3 patent issue. But exercise-related steps is, and I think the parties are all in agreement that what we're essentially talking about is when you go to the gym and say, the trainer prescribes three sets of 10 repetitions. So that's what we mean when we say set. So in its final written decision, the board set out. So if the dire reference refers to sets, and it talks about providing an exercise system that uses the present and past user performance in addition to demographic data for developing changes to the user's exercise program, why wouldn't that reasonably be read to include changes to the set? Well, because the term exercise program in the dire reference has a very specific meaning. It's defined very narrowly. And it's defined to refer only to the number of repetitions or changing the number of sets. Where does it narrowly define it? That's at column page A180 of, I'm sorry, not A180. A184, column 30, lines 39 through 45. And right there. Which column? Column 30. 30. Line 39 through 45. And right there, the discussion is about an initialization  And so it's laying out a format for how you proceed through that procedure. And in describing that, it says exercise program will typically include the weight to be simulated by the resistance in the system and the number of repetitions of the exercise to be performed by the user. But what's important to note, that everywhere else in the reference, exercise program is used consistently in that regard. It's used consistently to refer to just changing a parameter, amount of weight, number of repetitions. The exercise program in dire doesn't include different kinds of sets. No, it does not. So when dire wants to talk about sets, dire uses the term exercise session or exercise record information. And in our briefs, we list all the places where this happens. I've got them right here. I can read them to you, but they're in the brief. It's supported by the record. That narrow use of exercise program is consistent. It also, your question raises, in some way due process concern, this exercise program term appeared for the first time in the construction that was rendered by the board. Are you saying that exercise program in dire only talks about repetition? Yes. I mean, how would it actually work then? I mean, if you're giving you a program, I assume it's giving you a bunch of different sets of different repetitions. And so that's the danger. Because sitting here in 2016, that's how we feel. But there's no evidence of that in the rep record. Well, I mean, there is. I mean, there's the more general statement about how it based upon user past and present performance prescribes an exercise program. I mean, it can't just say do set or do repetitions. It has to tell you what kind of repetitions, doesn't it? It doesn't ever tell you. Whenever it wants to talk about sets, it talks about, it'll say set, but it doesn't talk about sets comprising part of an exercise program. When it wants to talk about. But it refers to exercise program. I mean, we're talking about a reference that is telling you how to do an exercise program remotely. And I mean, an exercise program has, if it's telling you to do repetitions, it can't just say do 50 repetitions without describing what those repetitions are of, can it? Well, yeah, it does say what they are of. But it doesn't say do three sets of 50 repetitions. It never says anything about changing that value. It might talk about being able to do that, but it doesn't talk about changing that. And if changing that is so fundamental and so obvious and was so at the time in 1995, that's what we have to bear in mind. There's no evidence of that. There's no evidence in the record that that's what a person in 1995 would have read the dire reference as disclosing. And if making changes to set number is something that's so fundamental, the record should be replete with, or the priority, it should be easy to find, easy to point to, easy to come up with an argument that makes that so. And there's- Did the court find that dire discloses changing the number of sets or that it would be obvious from dire to change the number of sets? A little bit of both. Really, it was an obviousness conclusion, but they also did this exercise program argument where they brought in exercise program into the construction at the very end and then said that same term appears in dire. And this was an argument that we were never allowed to address. This is not complex technology. So why, when the reference itself acknowledges that there are lots of parameters, there's the amount of weight to use, the number of reps to do, and the number of sets defined in other terms, you use the correct ones and I'm not, but the reference itself discloses there are all these different parameters that can be part of optimizing your exercise regime. And it expressly discusses changing at least two of the parameters, weights and number of reps. Why wouldn't it be obvious to someone of skill in this art who is an artisan skilled in exercise programs that you could also just change the number of reps, go do 50 reps at 10 pounds or do three sets of 20 reps at 10 pounds? Why wouldn't it be obvious? I mean, common sense really does have to come into play in really simple inventions like this. So why wouldn't it be obvious? Why isn't the board's decision correct in light of all this? There's no evidence of the perspective of someone of ordinary skill in the art in 2015 holding that kind of view. It's easy for us now to say that, but there's no evidence in the record. In 1995, thank you. Also, this is a core factual finding. In 1995, let me just take this into the real world, Raoul. In 1995, if you're working with a trainer and he sees you're tiring, he can say, well, instead of doing three sets, we'll do two. Or he can say, instead of doing three sets of 10, we're gonna do three sets of six. Those are fungible pretty much. We're talking about, please bear in mind, we're talking about a local system. But all you're talking about is basically computerizing a personal trainer. And so, I mean, those two kinds of directions, it seems obvious to me that in 1995, a person of ordinary skill would have understood if they said change the number of repetitions, they could have just as easily said change the number of sets. Because you get to the same result either way. Well, we don't have any evidence to that effect. We don't have any evidence that the person of ordinary skill in the art in 1995 would have held that point of view, that programming. I thought there was expert testimony here that someone would think of changing the number of sets. Say it again, your honor? I thought there was expert testimony here that someone would think of changing the number of sets. No, there's no testimony about that or that from a technology standpoint, we have the computing horsepower to alter the number of sets versus the number of reps. There's a distinction there. And it's the petitioner's burden to draw the correlation between those two. And in addition, from an exercise industry standpoint, whether one set of 100 repetitions is expected by the personal trainer to yield the same results and have the same benefits as 10 sets of 10 repetitions. Do those have the same training purposes? I venture not. But it's the petitioner's burden to produce evidence on that, that in 1995, those two things were interchangeable or one suggested the other. The petitioner failed to do that. And the board, this is a core factual finding. And the board ignored the holding of Zerko and KSM. Says you can't just chalk it up to common sense. This is a core factual finding. We need evidence to connect the dots. Anything further? I believe I've reserved five minutes. I think this is a good stopping point. So I'll stop here. Thank you. Mr. Shellen. Thank you, Your Honor. Good morning, Your Honors. May it please the court. I'd like to give a brief introduction and then respond directly to some questions you were asking of counsel. The issues on appeal here are straightforward and narrow. And it is a matter of common sense. The issues and arguments really boil down to semantics and ICON's narrow interpretation of Dyer, as well as its effort to rewrite the step limitation of Claim 1. When you say it's narrow interpretation of Dyer, I don't see Dyer disclosing changing the number of sets. So is your argument Dyer discloses it? Or is your argument one of skill in the art would know to modify that? Which of these arguments is yours? Your Honor, we believe that Dyer discloses. There's two important things that Dyer discloses. And it does disclose the change in the number of sets. And that is implicit in the fact that Dyer says that it automatically changes the user's program, automatically changes the user's exercise program based upon user performance. So that's the first one. And anyone would understand, it doesn't have to be a person of ordinary skill in the art, anyone would understand it's done a workout. There's three things you can change in weight workouts. I thought there was, was I right that there's expert testimony about that, about changing the number of sets? Yes, there is, Your Honor. We submitted expert testimony of where is it in the record? I believe it's at 8379 through 382. 379? Yes, is our expert's declaration. And then also, as we cited, Your Honor, Mr. Godstead, who is their expert, he admitted that programs encompass sets and reps. So it's not just a matter of, it's really common sense. Anyone would understand. What page did you say? I believe it's 8379 through 382 is There's no 379 in here. We don't have 379. Is that in your appendix? That's our, I believe that was our expert's declaration. Is your expert? He's cited in the court. Timothy Nicholson? Yes. It's on page 839. I'm sorry. Dr. Nicholson, especially. Why don't you get your appendix so you can show us precisely where he says that Dyer discloses sets and what? Or that one of the scholarly art would know to vary the number of sets if they're being told to vary the number of reps. It's in paragraph, unfortunately, it's in paragraph 8E of Nicholson. I don't know. There's no paragraph. You have, do you have the appendix? Unfortunately, I don't have the appendix for Dr. Nicholson. You came to an oral argument with an appendix. The appendix is this thin. Yes. And yet you didn't bring it. Unfortunately, I forgot. Can you lend him yours? Do you have an appendix? Thank you. Page 839. 839 is his deposition. What we're looking for is where did he testify about sets. Well, your honors, I believe it's in his, we submitted his expert report. His declaration was submitted to, and I'm not sure. You didn't put it in the appendix? It was in the joint appendix, and I believe it was cited. Well, where is it? Unfortunately, I'm not finding it right now in the appendix. Yeah, if you want us to read this stuff, you're supposed to put it in the appendix. And you're supposed to be familiar, more familiar than we are, with the record here, and to be able to point to us where the things you rely on are. We're not, believe me, going to take your word for it that it's in there. You have to show us where it is. Yes, your honor. And we have cited to Mr. Godstead, who  Where do we find their expert's name? Their expert is at 875, at line 9, excuse me, at page 9 of the transcript, also at A909. 879? That's not in here. 875, your honor. 875? Yes. And where is it? At page 9, lines 3 through 15. 875, there's no page 8 through 15? OK. But he just says that in an exercise routine, you would have a number of steps and a number of parameters within those steps, within those sets. You would have weight associated with a number of repetitions. That's all he says. How does that support your argument? Well, we believe that he's admitting that a person of ordinary skill would understand that exercise programs would have sets and repetitions. And if you could vary the number of repetitions, you could certainly vary the number of sets as well. Again, it's just common sense that a person of ordinary skill, a person who does a workout would understand. What this doesn't say, and you must agree because it's explicit, it doesn't say a person of ordinary skill would know you can vary the number of sets, right? He doesn't say that. He just says an exercise routine involves sets and steps and parameters. That's all he says. Right. And the question was about how does a person of ordinary skill apply the disclosures and strength equipment to something like a treadmill or a bicycle was the context of the question. How do we know that? It doesn't say that. That's in the question that was asked. That's at lines, again, same citation, 875. And it's lines 3 through 15 on page 9. I don't understand how this is the expert testimony that supports your claim that a person of skill in the art would know you can vary the number of sets. I mean, that's the only thing missing from Dyer. This whole case is about it. It's a stupid little point. But you're the petitioner. It was your burden to put on evidence. This isn't a case where it's just the government acting on its own, which is a little more forgivable. And we sometimes say, well, the government's allowed to rely on common sense. But when there's a petitioner who's brought a petition and has put on evidence, including expert testimony, we hold them to actually having to establish all of their points with evidence. And your question isn't even directed to what we're asking. Your question is directed to how you would compare the disclosures and strength equipment to a treadmill or a bicycle. That has nothing to do with varying steps versus varying repetitions. But the answer is important because it relates to the fact that a person of ordinary skill would understand that a program would have sets and repetitions. And so we believe that's important. But also, Your Honor, there's a second other disclosure in Dyer, which is very explicit. That the user can skip a set. And that is right in Dyer at column 47, at column 47, line 50 through 68 of Dyer. That's very specific, that the user can initiate the step limitation of the 1, 2, 3 patent. And the user can clearly decide to skip a set. And Dyer's specific. I'm looking here at the board's decision at 8, 11, and 12. And they say, in the fitness world, an exercise program has long been defined by both the number of repetitions and the number of sets. And it cites exhibit 1017. What is that exhibit? That's our expert's declaration. Which you didn't include in the appendix. It was cited in the board's. You're right, Your Honor, it was not included in the appendix. It was cited in the joint appendix. And I can submit that to Your Honors via letter today. And then the board refers to column 22 in Dyer. Correct. It's described as an exercise routine in terms of the number of sets. What does that say? Well, specifically, Your Honor, Dyer has numerous disclosures that talk about an exercise program in terms of sets. And if you look at figures 25 and 26 of Dyer, 26 is a Just stick with what I'm showing you. Yes, Your Honor. What does this? Column 22. Does this exercise record information contains data as to the initial weight, number of sets? Correct. It's a discussion of the fact that, again, person of ordering skill in Dyer. So this refers to altering the number of sets. Correct. And we believe that Dyer also has it in numerous places, as I indicated. Where does it say it alters number of sets, as opposed to just saying an exercise record contains this information? Where does it say altering sets? Well, there's the user skipping the set. Oh, no, no. In column 22, it doesn't, right? In column 22, it does not say altering sets. Yes. The lines that are cited do not talk about altering sets. That's correct. OK. So you think there are other lines, though, that do. And why don't you take us, then, to what you're talking about, which is at column 47 to 48. Yes. So at the bottom of column 47, at lines 55 through 68, this is the user-initiated skipping of sets in Dyer. And specifically, it talks about the one preferred embodiment of the system at line 59, compares the number of sets completed with the value of sets to be completed in a given session. And it states, if the user does not finish all sets, he is so advised. And if he does not then complete the session, his record is marked so that coaching comments regarding this may be given later. Similarly, if the user skips- Does that talk about the system reducing steps? It talks about the user skipping steps. Right. And that is what the step limitation, there's two ways it can be initiated and claimed in the step limitation of the 123 patent. And that is it can be initiated by monitored user performance or by user input. And so we believe that this disclosure of Dyer specifically meets that limitation of user input. And so we have user input, user deciding to skip, in addition with respect to- When they say user input, I thought I understood that in the patent to be the user affirmatively inputting changes to his anticipated exercise program ex-ante, not jumping off the treadmill. I mean, I use the treadmill all the time, right? And there's lots of times when I stop for a minute, put legs on both sides, and it just keeps going. Like, you know, I mean, this happens, right? These people do these things, and including me, where you skip a little. I thought that when they were talking about user input, though, they were clearly talking about me inputting into the system ex-ante what I'd like to do or modifying it. Am I wrong? Am I misremembering the teachings? What Dyer talks about is that- Not Dyer, the patent, because you're telling me look at the patent. Yes. And I believe ICON conceded in their original brief at page 10 that user input, such as skipping a station, cannot, can be, it can initiate the step limitation. And specifically- Well, the claim talks about performance, user performance changing. It's monitored user performance or user input. So user performance would count. And column 48 of Dyer, it talks about providing an exercise system which uses the present and past user performance history in addition to demographic data for developing changes in the user exercise program. And the column before that talks about changing sets. Correct. And throughout Dyer, there's a discussion of monitored user performance to automatically update changes to the exercise program. Now, it's important as well, I want to go back to the specific question you asked about exercise program and whether or not there's a disclosure of sets. We believe that exercise, if you read Dyer, all throughout Dyer, exercise session is a specific workout. Exercise program is the larger umbrella for the exercise session. And specifically, in figures 25 and 26, and in columns 32, line 60, through column 33, line 2, as well as through column 47, line 1, through column 47, line 68, there's a discussion of program and specifically referencing figures 25 and 26, which talk about sets. And figure 26 specifically has sets in it in Dyer. And as well, figure 25, which is the more general, again, has end of set as well. Again, we believe that this is a person would understand that when you're talking about a workout, especially on a strength machine, there's only three things you can change. And that's your sets, your reps, or the amount of your weight. And so we believe that a person- You can also change the delay in between performing sets. You can change the- Delay in between, the rest in between the sets. Right. You can change the rest, although that would not be a parameter of the workout, because it's a rest period. I mean, you need to exercise in terms of exercise, for instance, exercise-related step as well. But you could have a longer rest. I don't know. My trainer thinks how long I rest in between each set is definitely a parameter. He wants to keep me moving from one to the other to the other. Right. And Dyer specifically talks about sets in terms of, Your Honor, in terms of a three-second delay, that that signifies a new set as well. And so we talk about the- and in fact, Dyer as well talks about a rest period in figure 29 of 10 seconds, which would be another set as well. And that's specifically- excuse me, I wanted to provide you the citation. And Dyer, that is specifically at column 22, lines 24 through 27, where it talks about set as a period of substantially continuous exercise, where the user does not stop for more than a given limited time period, such as three seconds, which is something I think your trainer would like. But in terms of the person would understand doing a weight training, that you do have sets, reps, and weight are the three things you can change. OK, thank you, Mr. Scheller. We're out of time. OK, thank you, Your Honor. Mr. Freeman. Thank you, Your Honor. The claim requires a system that determines to carry out a different number of steps. Different numbers. The system determines to do that. If it responds to user input, and if the user stops, the claim's not satisfied unless the system then carries on and determines to carry out a different number of steps. But I thought the user could also change the number of steps, too. But the system has to respond. Responding to user input, the user input is not saying, I want to do a different number of steps. That defeats the whole purpose of the claim. The claim is determined. The system determines, it calculates, to carry out a different number of steps. Look, in column 48 of Dyer, where it talks about providing an exercise system which uses the present and past user performance history, in addition to demographic data for development changes to the user's exercise program, if the user's exercise program includes sets, then Dyer is describing that, right? Well, I'm not willing to concede the point that it includes sets. I didn't ask you to concede it. I said, assuming that the exercise program includes sets, this is describing your invention. OK, no, I don't think it is. Why not? Because it doesn't describe how to do it. It describes in great detail, glorious detail, how to do every single repetition. It says as a result of performance history. I'm sorry? It says as the result of performance history. No, I'm, how do we do, there's nothing in the record that says a person of ordinary skill in the art would have the technical know-how to do this. Well, let's put that aside. Isn't this describing changing an exercise program based on performance history? That's what that language says. OK, so if exercise program includes sets, this is changing the number of sets based on performance history, right? I don't agree that the reference discloses how to do that. I agree that it discloses how to change repetitions. I'm asking you whether this describes, as a result of performance history, changing the exercise program. The answer to that is yes, because that's explicitly what it says, right? In terms of what exercise program means in the dire reference. And if the exercise program includes sets, then it's talking about changing sets. Then it discloses the idea, but disclosing the idea. The immediately preceding part of this specification talks about changing the number of sets, right? Not, no, not determining to change the number of sets. No, it talks about changing the number of sets, right? In column 47. It does not talk about the system determining to change the number of sets. No, but it talks about changing the number of sets. And the question is whether you would read exercise program in column 48 to changing the number of sets. I don't believe that column 47 discloses changing the number of steps. I think it says you could skip one. Means you skip one. It doesn't entail to work out the program dictating a different number of sets. I'd like to turn briefly to exhibit 1017. It was discussed here. The discussion of it sort of bears out my point that there's no evidence, no support in the record for the idea that disclosure of changing repetitions, a system that changes repetitions is tantamount to a disclosure of a system that changes sets. Exhibit 1017 is not the declaration of their expert. It's the deposition transcript of our expert. It's the document, those pages that you went through with Mr. Scheller. And none of those support the idea that exercise program is something that, as the board said, in the fitness world has long been known to be defined by both a number of repetitions and a number of sets. Mr. Godstead never even uses the word exercise program in those four pages that are cited. He's not testifying from the perspective of a person of skill in the art in 1995, or at least the record doesn't disclose that he was. And exercise program, as I said, has a special meaning in Dyer, and it's not the standard industry meaning. The standard industry meaning would include sets. Well, I don't know. I don't know what it was in 1995. There's no evidence in the record of that. And it's very easy for us to sit here as persons skilled or not skilled in the art in 2016 and think it seems simple. In 1995, if it was so simple to have a system that changed number of sets as distinguished from number of repetitions on the fly like that, then the prior art would be replete with opportunities to cite to it. And there's nothing in the record, unless the court has anything further. Thank you. Thank you, Mr. Shelley.